**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SPECIALTY EARTH SCIENCES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 15-cv-06133 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| CARUS CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Specialty Earth Sciences, LLC ("SES") invented an environmental remediation technology that it licensed to Defendant Carus Corporation ("Carus"). SES alleges that Carus failed to develop properly the market for products containing SES's technology, fearing that if the technology were successful, it would hurt Carus's own primary product line. As a result, SES has sued Carus for breach of contract, breach of fiduciary duty, and fraud. To support its claims, SES seeks to introduce testimony from two expert witnesses: Dr. Stephanie Luster-Teasley and John Bone. Now before the Court is Carus's motion to strike Luster-Teasley's expert report and opinions, as well as those portions of Bone's expert opinions for which he relies on Luster-Teasley's opinions. (Dkt. No. 214.) For the reasons that follow, Carus's motion is granted in part and denied in part.

**BACKGROUND**

SES is a small environmental remediation company specializing in solutions for soil and groundwater remediation issues. (First Am. Compl. ¶ 7, Dkt. No. 207.) This action arises out of an agreement SES entered into with Carus granting Carus an exclusive license to sell products using SES's proprietary technology for treating soil and groundwater with lesser amounts of

reactants like permanganate ("License Agreement"). (*Id.* ¶¶ 8, 12, 45–46.) Under the License Agreement, Carus promised to use commercially reasonable efforts to develop the market for products employing SES's technology ("Licensed Products") and also agreed to pay SES royalties on its sales of the Licensed Products. (*Id.* ¶¶ 47–48.) However, according to SES, Carus regarded SES's technology as a threat to its own lucrative business of selling permanganate for use in traditional methods of soil and groundwater remediation. (*Id.* ¶ 27.) SES claims that, to quash that threat, Carus made certain misrepresentations to induce SES to enter into the License Agreement so that Carus could use its exclusive right to sell and market SES's technology to minimize the market for the technology. (*Id.* ¶¶ 21, 49, 67.) Specifically, SES alleges that Carus put SES's technology "on the back burner," and deliberately declined to use commercially reasonable efforts to develop the market for the Licensed Products. (*Id.* ¶¶ 1, 49.) SES contends that when it complained to Carus about its insufficient efforts at commercializing the Licensed Products, Carus responded that it was "not in the business of cannibalizing [its] primary product line." (*Id.* ¶¶ 1, 56.)

As a result of Carus's alleged failure to commercialize the Licensed Products, SES has brought the present action asserting claims for breach of contract, breach of fiduciary duty, and fraud. To support its claims, SES has proffered two expert witnesses. First, SES has retained Dr. Stephanie Luster-Teasley, an environmental engineering professor, to give her expert opinions on: (1) whether certain Carus products are Licensed Products; (2) whether Carus used commercially reasonable efforts to develop the market for the Licensed Products; and (3) the damages caused by Carus's wrongdoing. In addition, SES offers John Bone as a damages expert. Bone relies on Luster-Teasley's opinions for portions of his own opinions. Carus has moved to strike the entirety

of Luster-Teasley's expert report and testimony, as well as those portions of Bone's testimony for which he relies on Luster-Teasley's work.

## DISCUSSION

Federal Rule of Evidence 702 and the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), govern the admissibility of expert testimony. *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007). Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

"In *Daubert*, the Supreme Court interpreted Rule 702 to require the district court to act as an evidentiary gatekeeper, ensuring that an expert's testimony rests on a reliable foundation and is relevant to the task at hand." *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 789 (7th Cir. 2017) (internal quotation marks omitted). The district court's gatekeeping function requires the court to engage in a three-step analysis before admitting expert testimony. *Id.* at 779. Specifically, it must evaluate: "(1) the proffered expert's qualifications; (2) the reliability of the expert's methodology; and (3) the relevance of the expert's testimony." *Id.* The proponent of the expert bears the burden of demonstrating by a preponderance of the evidence that the expert's testimony satisfies the *Daubert* standard. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

## I.     Stephanie Luster-Teasley

Carus first seeks to strike the entirety of Luster-Teasley's expert report and testimony. It argues that Luster-Teasley is an academic focused on environmental engineering and lacks the requisite qualifications to testify on matters of product development, commercialization, and sales forecasting. Moreover, Carus complains that her testimony on those matters do not employ a reliable methodology.

To determine whether a witness is qualified to testify as an expert, a court must "compar[e] the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *Caroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir. 1990). "[A] court should consider a proposed expert's full range of practical experience as well as academic or technical training." *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000).

Luster-Teasley is an environmental engineer who describes herself as "a specialist in chemical oxidation controlled release application and remediation." (Def.'s Mot. to Strike Expert Report and Test., Ex. A at 2.) She holds a master's degree in chemical engineering and a PhD in environmental engineering. Currently, Luster-Teasley is a Professor and Chair of the Department of Civil, Architectural, and Environmental Engineering at North Carolina A&T State University, where her research "focuses on the use of chemical oxidants to remediate contaminants in soils and water." (*Id.*) Prior to entering academia, Luster-Teasley worked for approximately six months at a consulting firm as a staff environmental engineer specializing in chemical oxidation. This was followed by a one-year stint at another consulting firm as a field engineer focused on environmental remediation of contaminated sites and environmental site assessments.

In her expert report, Luster-Teasley begins by providing background on chemical oxidation, the process underlying the SES technology at issue here. Next, she proceeds to opine on whether particular Carus products meet the License Agreement's definition of Licensed Products. Then, Luster-Teasley discusses whether Carus used commercially reasonable efforts to develop the market for the Licensed Products. After concluding that Carus did not, she offers her opinion on the potential sales Carus could have made of the Licensed Products if it had used commercially reasonable efforts to develop the market for the products.

To the extent Luster-Teasley is offered as an expert to provide background information concerning chemical oxidation, this Court has no trouble concluding that she is qualified. Luster-Teasley's educational background focuses on both chemical and environmental engineering, she has work experience as a specialist in chemical oxidation and environmental remediation, and in her academic career, she has focused on the use of chemical oxidation to remediate contaminants. Indeed, Carus does not contend that Luster-Teasley is not qualified to provide general background information. Instead, it attacks her qualifications to give a specific opinion on the viability and applicability of wax-based oxidant cylinders as a technology, arguing that Luster-Teasley does not have any first-hand experience with such products. However, an expert does not have to "specialize or have experience in the particular product or field involved in the case" to qualify as an expert. *Superior Aluminum Alloys, LLC v. U.S. Fire Ins. Co.*, No. 1:05-CV-207, 2007 WL 1850860, at *5 (N.D. Ind. June 25, 2007) (listing cases); *see also Cary Oil Co. v. MG Refining & Mktg., Inc.*, No. 99 Civ. 1725(VM), 2003 WL 1878246, at *2 (S.D.N.Y. Apr. 11, 2003) ("[L]ack of extensive practical experience directly on point does not necessarily preclude an expert from testifying." (internal quotation marks omitted)). Here, it is sufficient that Luster-Teasley has demonstrated knowledge and experience with chemical oxidation systems as a general matter. *See*

*Hasan v. Cottrell, Inc.*, No. 10 C 5534, 2014 WL 4124254, at *8 (N.D. Ill. Aug. 21, 2014) ("Generally, where a proffered expert has expertise in a broad subject, he may give expert testimony on any specialized topic within that subject area.").

Similarly, Luster-Teasley's specialized knowledge of chemical oxidation systems also qualifies her to testify as to whether certain Carus products meet the License Agreement's definition of Licensed Products. Carus argues that Luster-Teasley is unqualified to testify on this topic because she is not a technology licensing expert and has no legal training relating to the interpretation of license agreements. But the Court does not believe that Luster-Teasley needs legal experience to be qualified to opine on whether a product fits the definition of a Licensed Product. As defined in the License Agreement, "'Licensed Product(s)' means the product(s) made, have made, developed, used, sold, marketed, distributed or sold by Carus that incorporate the SOCOR Technology,[1] the SES Patents, the SES Background IP, the SES Background IP [*sic*], or the SES Technical Information." (Def.'s Mot. to Strike Expert Report and Test., Ex. A at 10.). Thus, a Licensed Product is defined by reference to the technology that it incorporates. And Luster-Teasley's scientific and technical expertise specific to chemical oxidation makes her well-qualified to recognize when a particular product incorporates that technology.

Moreover, the methodology underlying Luster-Teasley's opinions on chemical oxidation and whether a product is a Licensed Product is reliable. She arrives at her opinions by using her scientific and technical knowledge to analyze relevant documents related to SES's disclosure of its propriety information to Carus and the development of each Licensed Product. *See, e.g.*, *Cement-Lock v. Gas Tech. Inst.*, No. 05 C 0018, 2007 WL 6947911, at *2 (N.D. Ill. Dec. 11,

---

[1] The License Agreement defines SOCOR Technology as "any encapsulation technology developed, conceived or discovered by SES for various oxidants." (Def.'s Mot. to Strike Expert Report and Test., Ex. A at 10.)

2007) (finding an expert's opinions reliable where he evaluated the evidence in the record "in light of his extensive experience in and knowledge of the business world"); *Phillips v. Raymond Corp.*, 364 F. Supp. 2d 730, 743 (N.D. Ill. 2005) ("[T]he process of analyzing assembled data while using experience to interpret the data is not illicit . . . ."). That methodology is sufficient and any weaknesses in her analysis may be attacked on cross-examination. *See, e.g.*, *Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010) ("Determinations on admissibility should not supplant the adversarial process; 'shaky' expert testimony may be admissible, assailable by its opponents through cross-examination."). Finally, Luster-Teasley's expert opinions on chemical oxidation and whether a product is a Licensed Product are relevant and helpful to the trier of fact; Carus does not contend otherwise. Thus, Carus's motion to strike Luster-Teasley's expert opinions on those topics is denied.

Carus has a stronger basis for objecting to Luster-Teasley's opinions as to whether Carus used commercially reasonable efforts to develop the market for the Licensed Products and the volume of sales of the Licensed Products that Carus could have made if it had done so. Specifically, Carus argues that Luster-Teasley has insufficient experience, education, or training in marketing and sales of remediation products or technologies. This Court agrees. Just because Luster-Teasley has expertise with respect to the science and technology underlying the Licensed Products does not mean that she has expertise in the marketing and sales of those products. *Cf. Washington v. Kellwood Co.*, 105 F. Supp. 3d 293, 310 (S.D.N.Y. 2015) ("[An expert's] extensive experience in accounting and business valuation does not translate into marketing expertise."); *Abaxis, Inc. v. Cepheid*, No. 10-CV-02840-LHK, 2012 WL 2979019, at *4 (N.D. Cal. July 19, 2012) (excluding an expert's opinions on the commercial success of products in a patent action because the witness was "an expert in pharmacy, not in sales, marketing, or consumer preferences

7

and demand"); *Rambus Inc. v. Hynix Semiconductor, Inc.*, 254 F.R.D. 597, 604 (N.D. Ill. 2008) (finding that an expert in electrical engineering's opinions on the commercial success of patented inventions were inadmissible because the expert lacked expertise on the "factors influenc[ing] the commercial success of the [patented] products").

SES argues that Luster-Teasley is qualified to offer an opinion on sales and marketing issues based on her previous experience with licensing a controlled release chemical oxidation polymer technology that she invented and patented. Similar to the License Agreement here, Luster-Teasley's licensing agreement contained a provision requiring the licensee to use commercially reasonable efforts to market products embodying her technology. And Luster-Teasley had weekly meetings with the licensee over a 2.5-year period during which they discussed the commercialization of her technology. In addition, Luster-Teasley attended two or three training sessions on commercialization offered by her university.

That Luster-Teasley developed a technology that was commercialized by the licensee does not qualify her as an expert in marketing and sales, however. *See, e.g.*, *Harris v. City of Chicago*, No. 14 C 4391, 2017 WL 3193585, at *4 (N.D. Ill. July 27, 2017) (holding that a proposed expert's "experience as a law enforcement agent [that] included two cases in which the police obtained false confessions" did not qualify him as an expert on false confessions); *Washington*, 105 F. Supp. 3d at 310 (deeming a proposed expert's "undescribed efforts to promote his own various businesses" as insufficient to qualify him to opine on marketing issues). Nor can the Court conclude she acquired sufficient expertise from taking a few training sessions focused on commercialization. *See Washington*, 105 F. Supp. 3d at 310 (stating that an expert's enrollment in "various marketing courses in graduate school" was insufficient to show that he had "engaged in the academic study of the discipline"). In any case, it is not apparent that Luster-Teasley actually

developed an expertise in sales and marketing from her limited experience and training in those areas. Indeed, in her expert deposition, she repeatedly responded to questions about the sales and marketing of her patented technology by stating that she left those questions to the licensee and focused on her research. (Def.'s Mot. to Strike Expert Report and Test., Ex. B at 251:15–252:18, 273:7–275:6.)

Moreover, Luster-Teasley's opinions on Carus's sales and marketing efforts with respect to the Licensed Products do not employ a reliable methodology. Her testimony on those topics purportedly relies on the evidence and her experience. But a witness who relies "solely or primarily on experience . . . must explain how that experience leads to the conclusions reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Demouchette v. Dart*, No. 09 C 6016, 2012 WL 6568232, at *4 (N.D. Ill. Dec. 14, 2012). Here, Luster-Teasley makes conclusory statements that her opinions are based on her experience but omits any explanation as to how her experience informs her opinions. Not only does Luster-Teasley's analysis fail to apply her past experience in the sales and marketing of her technology to the facts before her, it contains no reference whatsoever to any specific experience from Luster-Teasley's career. *See Crawford Supply Grp., Inc. v. Bank of Am., N.A.*, No. 09 C 2513, 2011 WL 4840965, at *3 (N.D. Ill. Oct. 12, 2011) ("An expert witness cannot merely present his qualifications alongside his opinion; he must explain why the application of his prior experience to the facts at hand compel his final conclusions.") "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

9

Given her limited qualifications in sales and marketing, the reliability of Luster-Teasley's opinions is rendered particularly suspect by her inability to connect whatever limited experience or training she has in those areas to her opinions on Carus's sales and marketing efforts with respect to the Licensed Products. For that reason, Carus's request to exclude Luster-Teasley's expert testimony on those topics is granted.

## II.     John Bone

Carus also seeks to strike the expert opinions offered by John Bone to the extent those opinions rely on Luster-Teasley's now stricken expert opinions. Bone is offered by SES as a damages expert. One category of damages upon which he opines is SES's damages from Carus's failure to use commercially reasonable efforts to market the Licensed Products.[2] Because Bone concededly lacks expertise in the market for the Licensed Products, he relies on Luster-Teasley's expert opinions. Carus argues that those opinions of Bone's must be stricken due to his reliance on Luster-Teasley's inadmissible opinions. SES responds by arguing that Bone's opinions should not be stricken because he did not rely solely on Luster-Teasley. Rather, he also relied on Carus's own sales projections for the Licensed Products.

In his expert report, Bone projects the sales Carus could have made of the Licensed Products based on four different potential scenarios. To create the first two scenarios, Bone used Carus's internal sales projections and for the third and fourth scenarios, he relied on Luster-Teasley's opinions regarding the sales Carus should have been able to achieve by the fifth year of the License Agreement. While only the third and fourth scenarios are based primarily on Luster-

---

[2] Bone also offers an opinion on the damages arising from a tortious interference with prospective economic advantage claim that SES has since dropped. Because his opinions on that claim are now moot, the motion to strike those opinions is granted.

Teasley's own projections, Carus argues that all four scenarios should be excluded because Bone considered discussions he had with Luster-Teasley in devising each scenario.

The Court agrees that the third and fourth scenarios must be excluded, as Bone admits that those scenarios are primarily based on Luster-Teasley's now stricken opinions. (Def.'s Mot. to Strike Expert Report and Test., Ex. F at 227:15–228:4.) Bone's first two scenario, however, are based on the "expectations of the parties as they were going into the" License Agreement as embodied by Carus's internal sales projections. (*Id.* at 137:1–11.) Thus, those scenarios are viable even with Luster-Teasley's opinions stricken. While Carus contends that Bone's opinions as to scenarios one and two are unreliable because they were partially informed by his discussions with Luster-Teasley, any issues arising from such reliance may be explored on cross-examination. Thus, Carus's motion to strike Bone's expert testimony is granted as to scenarios three and four and denied as to scenarios one and two.

## CONCLUSION

For the foregoing reasons, Carus's motion to strike the expert report and testimony of Luster-Teasley and opinions of Bone based on Luster-Teasley's opinions (Dkt. No. 214) is granted in part and denied in part.

ENTERED:

Dated:  November 30, 2020

Andrea R. Wood
United States District Judge